UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOWAT CONSTRUCTION COMPANY, a Washington corporation; UNITED STATES OF AMERICA for the use and benefit of MOWAT CONSTRUCTION COMPANY<br><br>Plaintiff,<br><br>v.<br><br>DORENA HYDRO, LLC, an Oregon Limited Liability Company; WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania surety company<br><br>Defendants. | NO.<br><br>(District of Oregon Case No. 6:14-cv-00094-AA)<br><br>MOTION FOR LEAVE TO TAKE 2-DAY DEPOSITION AND FOR ORDER COMPELLING ATTENDANCE<br><br>**NOTE ON MOTION CALENDAR:**<br><br>**Friday, March 13, 2015** |

### I.   INTRODUCTION AND RELIEF REQUESTED

Mowat Construction Company ("Mowat") respectfully asks this Court to issue an order authorizing and compelling witness attendance of a deposition consisting of two 7-hour days, of Tamara Schurian, a key percipient witness in the matter of *Mowat Construction Company v. Dorena Hydro, LLC*, currently pending in the United States

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 1

Ahlers & Cressman PLLC
999 THIRD AVENUE, SUITE 3800
SEATTLE, WASHINGTON 98104-4088
(206) 287-9900   Fax: (206) 287-9902

1  District Court, District of Oregon, Eugene Division, Cause No. 6:14-cv-00094-AA ("the
2  Litigation").

3        The Litigation arises out of a hydroelectric construction project in Oregon and
4  the primary dispute is between the project's contractor and owner. The witness,
5  Ms. Schurian, was the owner's Quality Control program manager, and her involvement
6  in the project spanned more than 1 1/2 years. During that time, she was a key on-site
7  observer and coordinator for the owner, prepared daily, weekly, and monthly reports to
8  various stakeholders (including the U.S. Government) regarding the project, and
9  prepared the weekly construction meeting agendas and minutes.

10       The issues in dispute in the Litigation range from competing claims of schedule
11 delay, to cost overages, to the quality of the construction work. As the owner's Quality
12 Control program manager, the witness is anticipated to have extensive knowledge
13 regarding these and other core issues in the Litigation. The project owner has produced
14 over 18,000 electronic documents of which the witness was the custodian (i.e., her
15 emails and computer files), as part of a project file production now in excess of 120,000
16 electronic documents.

17       Completing a fair examination of this key fact witness in a single 7-hour day is
18 not feasible given the depth and breadth of her personal knowledge and the substantial
19 volume of documents for which she is either responsible or knowledgeable. Mowat
20 accordingly requests an order under Fed. R. Civ. P. 30(d)(1) allowing an additional day.

21       **II.  FACTS**

22    *A.  The Project, Witness, and Litigation*

23       Mowat is the plaintiff in the Litigation against Dorena Hydro, LLC ("Dorena")
24 arising out of a hydroelectric construction project near Cottage Grove, Oregon ("the

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 2



1  Project"). The details of the disputes arising out of that project are set forth in the most
2  recent Complaint and Answer / Counterclaim, submitted herewith. *See Storti Decl.*, Ex.
3  A, B. In high-level summary, Mowat was the general contractor for the Project under a
4  contract executed in May 2012. Mowat's scope of work was to retrofit an existing
5  United States Army Corps of Engineers (USACE) flood control dam with hydroelectric
6  production facilities pursuant to plans and specifications provided by the owner, Dorena.
7  *See id.* In addition to several new buildings, a water conveyance system, and site work,
8  Mowat's scope of work included installation of two turbine-generators, furnished by
9  Dorena. *See id.* The construction contract provided fixed prices for certain components
10 of the work, with the remainder to be paid on the basis of unit prices or reimbursed to
11 Mowat based on its actual costs incurred. *See id.* Construction of the project was delayed
12 for various reasons, including delayed governmental approvals and major changes to
13 significant project elements beginning in 2012 and reaching into 2014. *See id.*

14      Mowat filed the underlying litigation in January 2014, after Dorena failed to pay
15 several months of outstanding progress payment applications. *See id.* Dorena terminated
16 Mowat shortly thereafter. *See id.* At the time of termination, Mowat was working to
17 address manufacturing defects in one of the turbine-generators furnished by Dorena and
18 awaiting a change order to build a redesigned access road and retaining wall which at the
19 time the USACE and Federal Energy Regulatory Commission (FERC) required to be
20 built before the facility could be started up, tested, commissioned, or operated. *See id.*

21      Mowat's claims in the Litigation include breach of contract and equitable bases
22 to recover the amounts unpaid by Dorena, while Dorena's counterclaims include delay,
23 misrepresentation, defective work, and various other allegations and theories. *See id.*

24

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 3



1       The witness was Dorena's Quality Control manager beginning in January 2013. *See Storti Decl.*, Ex. C. Even earlier, she had been the owner's night shift Quality Control consultant beginning in approximately September 2012. *See Storti Decl.*, Ex. D. Among other things, she submitted daily quality control reports to the owner, attended and kept the minutes of weekly construction meetings, circulated weekly and monthly reports on behalf of the owner to USACE and FERC, and reviewed and signed submittals to the USACE, including monthly schedule submittals. *See Storti Decl.*, Ex. E – I. She also participated in various testing and observation tasks on behalf of the owner with regard to the ongoing work. During her tenure as Quality Control manager, when most of the construction occurred, there was perhaps no representative of the owner with more time on-site than Tamara Schurian.

      Ms. Schurian has relevant knowledge spanning the issues in the litigation, including schedule, quality of the construction work, design changes and impacts, government approvals, on-site communications, testing, cost controls and overruns, value engineering, contractor and owner submittals, government reporting and compliance, and owner payment issues (the owner experienced repeated financial challenges that caused significant payment delays to, among others, its design engineers, Mowat, and even Ms. Schurian's consulting firm, Cooper Zietz). *See Storti Decl.*, Ex. E – J.

      In discovery, Dorena has produced 18,208 electronic documents with Ms. Schurian indicated as the "custodian" (i.e. the documents came from her email files or her computer). *Stori Decl.*, ¶ 4. Her documents include thousands of pages of reports, minutes, and submittals, in addition to emails discussing nearly every aspect of the construction of this sophisticated project. *Id.* More recently, Ms. Schurian's company

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 4



produced its electronic records related to the project, which contain more than 700 MB of data, including multiple volumes of Ms. Schurian's "field notes" kept during the project. *Id.* There is no feasible way to cover even in cursory fashion the most important aspects of this witness's testimony in a single 7-hour day, much less to obtain her knowledge of the detailed matters disputed in the Litigation. Even in the requested two days this will present a significant challenge.

### B. *Subpoena and Negotiations*

Mowat served a deposition subpoena on Ms. Schurian on February 19, 2015, nearly a month before the deposition dates stated in the subpoena, March 12 and 13, 2015. *Storti Decl.*, ¶ 5. The following day Ms. Schurian called Mowat's counsel and indicated she was glad to cooperation but had family coming into town from Florida on the 12th and 13th and asked to re-schedule. *Id.*, ¶ 6. She expressed no concern or objection to making herself available for two days, was professional and cooperative, and provided available alternative dates of March 10, 11, 18, 19, and 24-26. *Id.* Counsel told her efforts would be made to reschedule, pending conference and confirmation with Mowat's and Dorena's lawyers. *Id.* Counsel for Mowat and Dorena promptly agreed on alternative dates mutually available for them, their clients, and Ms. Schurian, and Dorena's counsel agreed that two days should be scheduled for Ms. Schurian's deposition.

On February 23 counsel sent an e-mail to Ms. Schurian with tentative confirmation that 3/18 and 19 looked like they would work for alternative dates. *Storti Decl.*, Ex. L. On February 26 counsel confirmed via e-mail that all counsel were available on 3/18 and 19. *Storti Decl.*, Ex. M. Ms. Schurian responded the same day

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 5



1 confirming that "those dates work for me," and indicating that her counsel Scott
2 Schnuck would be contacting counsel regarding "location." *Id.*

3 That evening Mr. Schnuck called, said he was available on both the 18th and 19th,
4 but that he would be limiting the deposition to 7 hours, and he preferred the 19th to the
5 18th. *Storti Decl.*, ¶ 9. Mowat's counsel asked Mr. Schnuck to be more flexible and
6 explained that Ms. Schurian is an important witness, with numerous documents related
7 to her involvement, and that it would take more than one day, especially if Dorena's
8 lawyers want to question her. *Id.* Mr. Schnuck refused to reconsider or agree to work
9 with counsel, though he confirmed he did not know much of anything about the project
10 or the litigation. *Id.* Mr. Schnuck confirmed via e-mail later in the afternoon that he
11 would only make Ms. Schurian available for one day. *Id.* and Ex. N. He had no
12 objection to the location in Seattle. *Id.* During the telephone conference with Mowat's
13 counsel, Mr. Schnuck asked that counsel send him a copy of the Complaint in order to
14 apprise himself as to what the litigation was generally about, which counsel immediately
15 provided. *See Storti Decl.*, ¶ 10 and Ex. O.

16 In addition to the Second Amended Complaint, Mowat provided Mr. Schnuck a
17 draft copy of the motion, requesting that he reconsider his position. *Storti Decl.*, ¶ 11
18 and Ex. P. Mr. Schnuck left a voicemail after hours on March 3, confirming he would
19 not make Ms. Schurian available for more than one day, but indicating he would confer
20 with her and let counsel know the following day. Mr. Schnuck has provided no further
21 response and has not withdrawn his objection. This Motion follows.

### III. <u>ISSUE PRESENTED</u>

23 Whether the Court should extend the presumptive one-day deposition time limit
24 to two days to enable a fair examination of a key witness in a multi-million dollar

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 6



1 construction lawsuit where the witness was the defendant's Quality Control program
2 manager, was involved in the project for more than a year and a half, authored or has
3 knowledge regarding hundreds of key documents contemporaneously recording
4 construction progress and issues on the project, and has produced over 18,000 records
5 potentially relevant to the contractor-owner dispute?

6 **IV.   EVIDENCE RELIED UPON**

7 Mowat relies on the Declaration of Tyler Storti filed herewith, the exhibits
8 attached thereto, and the records and papers on file herein.

9 **V.   LEGAL AUTHORITY AND ANALYSIS**

10
11 Federal Rule of Civil Procedure 30(d) provides:

12 Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another
13 person, or any other circumstance impedes or delays the examination.

14 Fed.R.Civ.P. 30(d)(1). The Rule provides substantial latitude to provide additional time,
15 and recognized factors justifying good cause for an extension of the standard 7-hour
16 duration include "[i]f the examination will cover events occurring over a long period of
17 time" and where "the witness will be questioned about numerous or lengthy
18 documents." Fed.R.Civ.P. 30 Advisory Committee Notes (2000 Amendment). The rule
19 also references Rule 26(b)(2), which addresses other factors bearing on the whether to
20 permit a deposition to exceed the standard seven hours:

21 (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or
22 less expensive;

23 (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; and
24

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 7



> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

Here, allowing Mowat adequate time to fully depose Ms. Schurian comports with the letter and purpose Rule 30(d), which contemplates "that a rigid application of the seven hour rule ought not provide a unnecessary roadblock to the interests of justice." *Moore v. CVS Corp.,* 2005 WL 581357 (W.D.Va. Mar. 11, 2005); *see also Malec v. Trs. of Boston Coll.,* 208 F.R.D. 23, 24 (D.Mass.2002) ("Obviously, the Court will allow more than seven hours "if needed for a fair examination of the plaintiff"); Fed.R.Civ.P. 30 Advisory Committee Notes (2000 Amendment) ("[i]t is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court," and "[p]reoccupation with timing is to be avoided").

The examination of Ms. Schurian will necessarily cover events occurring over a long period of time and involve numerous documents that she authored, reviewed, signed, received, and/or distributed. As the matters in dispute in the Litigation cover the full time period of Ms. Schurian's multi-year engagement on the Project, her examination will involve events and documents from September 2012 through February 2014 and beyond. For example, the Litigation includes claims of schedule delay related to major portions of the project that were redesigned during construction, then caught up in longer-than-expected government approval processes. Ms. Schurian was personally involved in discussions regarding these redesigns, including changes to a "Siphon House," a "Valve Vault," a significant retaining wall and access road, major electrical systems, and various smaller changes. Indeed, this witness is uniquely situated because

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 8



1  she had free access to information and discussions with other owner representatives as
2  well as the owner's design engineers, and the contractor's personnel. Similarly, the
3  owner's counterclaims include allegedly defective construction, directly implicating Ms.
4  Schurian's knowledge as the individual charged with managing the owner's Quality
5  Control program. The scope of her knowledge on key issues and the duration of her
6  involvement weigh in favor of additional time.

7  The number of documents for which Ms. Schurian is responsible further supports
8  an additional day to complete a fair testimonial examination. Ms. Schurian was not only
9  a key management consultant and on-site presence for the project owner, but she was
10 also a primary historian for the project. She kept and circulated the weekly construction
11 meeting minutes, documenting the progress of the work, statements by the various
12 stakeholders, and references to various issues now in dispute between the contractor and
13 owner. She authored and circulated reports—most dozens of pages in length—on behalf
14 of Dorena Hydro reporting to the U.S. Government (USACE and FERC) regarding
15 construction progress, delays, challenges, changes, designs, and other matters. She
16 reviewed and signed submittals, also for provision to the Government. One day is
17 simply insufficient to fairly examine her regarding the key project documentation for
18 which she was responsible, much less to cover even the most important documents in
19 her 18,000+ pages of project records. Indeed, her counsel recently informed Mowat's
20 counsel that Ms. Schurian has another 7 notebooks of her own personal documentation
21 which has not yet been disclosed.

22 Finally, balancing the Rule 26(b) factors, there is no viable replacement for Ms.
23 Schurian's testimony, as she was one of the few owner's representatives with full-time
24 on-site presence, she was responsible for key project documents upon which both parties

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 9



1  will rely in presenting their cases, she alone was responsible for the owner's Quality
2  Control program, and her employer has lodged allegations placing construction quality
3  directly at issue. The deposition of this unique key witness is neither cumulative nor
4  duplicative; indeed, hers will be only Mowat's fourth deposition, following only the
5  owner's two design engineers and the president of Dorena Hydro itself. The substance
6  and value of her testimony is not available through other sources, such as documents,
7  which will be a central point of inquiry. Last, the burden of a second day is minor in
8  light of its likely benefit, as the parties' claims in the Litigation are over $15,000,000
9  apart (Mowat's complaint seeks over $7 million, and Dorena's counterclaim seeks at
10 least $8 million), Ms. Schurian's consulting firm was well compensated for her
11 involvement in this sophisticated project (accounting records reveal her employer
12 charged approximately $700,000 to Dorena), and it is anticipated that as a consultant
13 who communicated freely with the owner, contractor, engineers, and government, her
14 testimony will be uniquely valuable both in advancing resolution efforts and establishing
15 a necessary factual record for all involved.
16     //
17     //
18     //
19     //
20     //
21     //
22     //
23     //
24     //

MOTION FOR LEAVE TO TAKE 2-DAY
DEPOSITION AND FOR ORDER
COMPELLING ATTENDANCE– 10



## VI. CONCLUSION

For the foregoing reasons, Mowat respectfully requests that the Court issue an order granting Mowat a second day of time to conduct a full and fair deposition of Ms. Schurian.

DATED: This 5th day of March, 2015.

**AHLERS & CRESSMAN PLLC**

By: /s/ James R. Lynch via ECF /s/
John P. Ahlers, WSBA #13070
James R. Lynch, WSBA #39274

**STEWART SOKOL & LARKIN LLC**
John Spencer Stewart, WSBA #15887
2300 SW 1st Ave, Ste. 200
Portland, OR 97201
(503) 221-0699

Attorneys for Mowat Construction Company